**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NATIONAL COUNCIL OF THE
CHURCHES OF CHRIST IN THE USA,
Plaintiff-Appellant,

v.                                                             No. 97-1851

FIRST UNION NATIONAL BANK OF
VIRGINIA,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-96-1446-A)

Argued: May 6, 1998

Decided: July 22, 1998

Before WIDENER and MOTZ, Circuit Judges, and
HOWARD, United States District Judge for the
Eastern District of North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Richard Francis Lawler, WHITMAN, BREED, ABBOTT
& MORGAN, L.L.P., New York, New York, for Appellant. Grady
Craven Frank, Jr., HAZEL & THOMAS, P.C., Alexandria, Virginia,
for Appellee. **ON BRIEF:** Philip M. Smith, WHITMAN, BREED,

ABBOTT & MORGAN, L.L.P., New York, New York; Michael McGettigan, RICHARDS, MCGETTIGAN, REILLY & WEST, P.C., Alexandria, Virginia, for Appellant. Thomas C. Junker, HAZEL & THOMAS, P.C., Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Appellant, The National Council of the Churches of Christ ("NCC"),[1] argues the district court erred in granting judgment as a matter of law for First Union National Bank of Virginia ("FUNB") as to NCC's three state law claims pursuant to Fed. R. Civ. P. 50(a)(1). The district judge found the state law claims were pre-empted by Regulation J.

I.

Rule 50(a) provides that, in actions tried before a jury, the district court may grant a motion for judgment as a matter of law if "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party." Fed. R. Civ. P. 50(a)(1). We review a district court's grant of judgment as a matter of law de novo. See Marlone v. Microdyne Corp., 26 F.3d 471, 475 (4th Cir. 1994); Parker v. Prudential Ins. Co. , 900 F.2d 772, 776 (4th Cir. 1990). Finding no error, we affirm the district court.

II.

NCC instituted this action on October 8, 1996, claiming that FUNB wrongfully permitted approximately $8 million of NCC's funds to be

_____

[1] NCC is a non-profit corporation representing approximately thirty-four Protestant and Orthodox churches.

2

wire transferred out of an account at FUNB. NCC had an account at FUNB which had been opened by NCC's director of human resources, Emilio Carrillo ("Carrillo"). There was apparently a "scam" orchestrated by an individual named Michael Crawford ("Crawford"), a purported investment advisor and principal of Libra Investments, Ltd. ("Libra"), who convinced Carrillo to transfer NCC's funds to the First Union account.

Carrillo was authorized by NCC's governing board to pool and administer NCC's funds for the payment of health insurance premiums for NCC's retired employees. Carrillo discussed his plans for investing the funds with various NCC employees, including several of its senior officials. Sometime in November 1993, Carrillo met with Crawford to discuss Crawford's proposals for investing the funds. On December 21, 1993, Carrillo signed an escrow agreement with Crawford, on behalf of Libra, which provided that Libra would act as escrow agent and would manage monies of NCC in an escrow account to be established at FUNB. The escrow agreement had the corporate seal of both NCC and Libra.

On December 21, 1993, Crawford presented the escrow agreement to the Reston Town Center Virginia Branch of FUNB and opened an escrow account captioned "National Council of Churches of Christ, Libra Investments, Ltd. Escrow Agent." Crawford, Carrillo, and two other NCC executives later signed signature cards for that account. The signature cards provided that FUNB would recognize any of those signatures in the payment of funds or in the transaction of other business in or for the escrow account.

Sometime around December 22, 1993, Carrillo met with NCC's controller, Leo Lamb ("Lamb") and explained certain investments that Carrillo had discussed with Crawford. During that meeting, Carrillo requested that Lamb initiate a wire transfer of $8 million of NCC's funds from NCC's account at Chemical Bank in New York to the escrow account at FUNB in Virginia. Thereafter, Lamb approved the transfer which occurred in two installments--$3 million on December 22, 1993, and $5 million on December 29, 1993.

On December 30, 1993, Crawford, the escrow agent and an authorized signatory, directed FUNB to wire transfer $7.9 million to an

3

account at Boston Private Bank, where the funds were to be used to purchase "Prime Bank Guarantees." FUNB complied with that directive later in the day, transferring the money by"Fedwire."[2] On January 3, 1994, FUNB transferred $80,000 from the escrow account to an account at Crestar Bank, again pursuant to Carrillo's instructions and again by Fedwire.

After discovering that the Prime Bank Guarantees were worthless and that it had been defrauded by Crawford, NCC filed suit against FUNB.[3] NCC alleged four grounds for recovery: Count One claimed that because the two wire transfers were unauthorized by NCC, FUNB was liable under Va. Code Ann. § 8.4A-202 (the Regulation J claim);[4] Count Two alleged that FUNB breached an implied contract by allowing the account to be opened and thereafter permitting the wire transfer; Count Three claimed FUNB breached a duty to NCC as a depositor and a customer; and Count Four alleged FUNB's actions were negligent. FUNB's motion to dismiss and subsequent motion for summary judgment were denied by the district court and a jury trial commenced on May 20, 1997.

At the close of NCC's presentation of evidence, FUNB moved for judgment as a matter of law on NCC's three state law claims, Counts Two, Three and Four, arguing that those claims were pre-empted by Regulation J under this court's analysis in <u>Donmar Enters. v. Southern Nat'l Bank of N.C.</u>, 64 F.3d 944 (4th Cir. 1995). The district court judge granted FUNB's motion finding that NCC's state law claims

_____

[2] Fedwire, or the Federal Reserve Wire Transfer Network, is a funds-transfer system owned and operated by the twelve Federal Reserve Banks. <u>See</u> 12 C.F.R. § 210.26(e). It is a computer-linked payment and message system among Federal Reserve Banks and banks with Fedwire privileges.

[3] FUNB submits that beginning in March 1994, NCC initiated litigation in England and elsewhere in which it alleged it had been defrauded by several European entrepreneurs in connection with the use of the wire transferred funds to purchase the Prime Bank Guarantees. NCC recovered approximately $5.17 million from those actions.

[4] Because the wire transfers were made by Fedwire, NCC's Count One was deemed amended during trial to state a claim under Regulation J, instead of Va. Code Ann. § 8.4A-204(a). J.A. p. 454.

4

were pre-empted. The case then went forward on Count One, NCC's claim under Regulation J. The jury deliberated approximately forty-five minutes before returning a verdict for FUNB. NCC appeals the trial court's decision to dismiss the three state law claims, contending that these claims are not pre-empted by Regulation J because the claims are directed towards FUNB's conduct prior to the wire transfer.

III.

NCC's first cause of action is governed by Article 4A of the Uniform Commercial Code ("UCC") because FUNB's December 30, 1993, transfer of funds was sent by Fedwire. Moreover, Federal Reserve Board Regulation J, also applies because Regulation J adopts Article 4A of the UCC as the governing statute for funds transfers within the Fedwire system. 12 C.F.R. § 210.25(b)(1). Although Regulation J incorporates the provisions of Article 4A, the commentary to Subpart B provides that any provisions of Article 4A that are inconsistent with Subpart B are expressly pre-empted. 12 C.F.R. § 210, Subpt. B, App. A. Courts may resort to principles of law or equity outside of Article 4A so long as these principles do not create rights, duties and liabilities inconsistent with those stated in Article 4A. See Donmar Enters. v. Southern Nat'l Bank of N.C., 64 F.3d 944, 949 (4th Cir. 1995) (citing the Official Commentary to UCC§ 4A-102.)

NCC concedes that the "wrongful" wire transfer on December 30, 1993, is covered by Regulation J and that if all its claims were directed to this wrongful transfer, the state law claims would be pre-empted. NCC argues, though, that their state law claims are not inconsistent with Regulation J because they are directed at FUNB's conduct prior to the wire transfer and not merely the transfer itself. For example, NCC claims that FUNB should not have allowed the account to be opened. NCC also claims FUNB was negligent and breached certain implied duties to NCC both in allowing Crawford to effect his defrauding scheme and ignoring all of the blatant signs that Crawford was a con man.

The most comprehensive discussion of Regulation J occurred in a district court case in this circuit under facts similar to the present case. In Donmar Enters. Inc. v. Southern Nat'l Bank of North Carolina,

5

828 F. Supp. 1230 (W.D.N.C. 1993) (Potter, J.) ("Donmar I"), aff'd, 64 F.3d 944 (4th Cir. 1995) ("Donmar II"), the district court found that any legal remedies provided for by state law which contradict or are duplicative of the remedies afforded by Regulation J and its purposes are "inconsistent provisions" within the meaning of 12 C.F.R. § 210.25(a), and are thus displaced by the pre-emptive effect of Regulation J from furnishing either a contradictory or"additional remedy for losses resulting from transactions within the FedWire system." Id. at 1236.

As to duplicative causes of action, such as wrongful payment and negligence, the district court found pre-emption of state law because "[these causes of action] do not relate exclusively to `governing funds transfers. . . .'" and "[o]nly those provisions of state law which are compatible with Regulation J and are directed solely at `governing funds transfers' are expressly declared free from pre-emption by Regulation J." Id. (citing Commentary, 12 C.F.R. § 210.25(a)). The court also addressed the issue of pre-emption of plaintiff's negligence claim and found the claim pre-empted because Regulation J contains its own standards of care.

In affirming the district court, this court concurred that inconsistent provisions of state law are pre-empted, but state law which does not conflict with Regulation J is not pre-empted. Donmar II, 64 F.3d at 949. An example of such a non-conflicting state law is one governing funds transfers that applies to parties to which the federal Article 4A does not apply. Id. (citing Appendix A to Subpart B to Part 210, 12 C.F.R. § 210.25). However, in Donmar as in the case sub judice, Article 4A does apply.

This court determined in Donmar that because the bank had complied with, and therefore had no liability under, Subpart B, "any liability founded on state law of negligence or wrongful payment would necessarily be in conflict with the federal regulations and is pre-empted." See id. By the same reasoning, this court is unpersuaded by NCC's contention that FUNB's actions occurring before the wire transfer are actionable in addition to the remedy provided under Regulation J. NCC's state law claims all arise out of their losses suffered when FUNB transferred the $7.9 million. Were it not for the alleged

6

unauthorized transfer, NCC could not be heard to complain as they would have suffered no damages.

After being fully instructed on the law concerning Regulation J, the jury determined that FUNB was not liable to NCC for damages. The jury found FUNB properly transferred the money under Regulation J. Thus, this court's imposition of additional state liabilities on FUNB would result in an inconsistent, and therefore pre-empted, outcome. NCC cannot compartmentalize and detach its state causes of action simply because certain of FUNB's activities occurred before the transfer when such causes of action would not have been available minus the resulting transfer. FUNB's December 30 transfer is the action which allegedly injured NCC, and that transfer is covered by Regulation J. Accordingly, Regulation J pre-empts NCC's state causes of action, and those claims were properly dismissed by the trial court judge.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

7